**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **HUGO MEDELLIN** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 1:22-CV-084** |
| | § | |
| **SPACE EXPLORATION** | § | |
| **TECHNOLOGIES, CORP., et. al.,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION TO QUASH SUBPOENA**

While Plaintiff filed a motion to quash (Doc. 16), he ultimately seeks a protective order from this Court concerning the scope of the cell-phone records sought by the defense—Space Exploration Technologies Corporations, hereinafter referred to as "Space Ex" and Arion Moreshedian. *See* Fuller v. Werner Enterprises, Inc., No. 3:16-CV-2958-BK, 2018 WL 10374819 (N.D. Tex. Apr. 24, 2018). Plaintiff Medellin believes he has a personal right to privacy and privilege with respect to the cell phone records subpoenaed. *Id*. at 2. Thus, Plaintiff Medellin is requesting that the Court find it appropriate to modify, rather than quash, the subpoena.

Unless otherwise limited by the court, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). On timely motion, an issuing court must quash or – preferably – modify a subpoena that subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iv); *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa*, 392 F.3d at 818. Even if one is not in possession or control of the materials sought in a subpoena and is not the person/entity to whom the subpoena is directed, a party has standing to move to quash or modify the subpoena under Federal Rule of Civil Procedure 45(d)(3) if it has a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (citations omitted).

A court may issue a protective order, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). To meet the "good cause" requirement, the party moving for a protective order must "show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (citation and internal quotation marks omitted). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

While the defense pleadings in this case do not include allegations Plaintiff Medellin was using a mobile-device at the time of the crash, Plaintiff concedes that the defense should be allowed to obtain and examine his cell phone records albeit a more limited time-frame. Defendant Space Exploration Technologies Corporation's Original Answer and Defendant Arion Morshedian's Original Answer, hereinafter referred to as *Exhibit A*. While contributory negligence related to cell phone use is not reflected in the defendants' pleadings, the defense should be allowed to determine whether Plaintiff Medellin was "texting" or on the phone at the moment the crash occurred.[1]

However, contrary to the Defendants' assertion, records for one day before and after the crash are not relevant to Plaintiff's causation and damage arguments. The request is over broad and seeks confidential and privileged information, while violating Plaintiff's right to privacy. Doc. 19, 3. The records sought are not relevant to the claims and defenses alleged or proportional to the needs of this case.

First, unlike most cases, the events leading up to and the crash itself were captured on video. Plaintiff obtained a copy of the dash cam video from the vehicle owned by Defendant Space Ex. The Defendants have also obtained a copy of this video.[2] The video clearly shows the seconds leading up to the crash and show the Plaintiff's vehicle at a complete stop and Defendant Morshedian failing to utilize vehicle's brakes causing the crash.[3] Plaintiff Medellin also had a dash cam, which caught the moments leading up to the crash.[4]

---

[1] Plaintiff does not believe this would have any bearing on his case as the entire crash was caught on video.
[2] On October 11, 2022, about the time Plaintiff received the video, Plaintiff's record retrieval service confirmed that defense counsel ordered the same records.
[3] TESLA dash camera footage: https://www.dropbox.com/s/u03gz18u6hjl2l6/Fisheye.mp4?dl=0
[4] Plaintiff Hugo Medellin's dash camera footage: https://www.dropbox.com/s/ph55fdbnin9zppu/Ex.%20F%20-%20Dash%20Cam.mp4?dl=0

The video shows Plaintiff Medellin decelerating and bringing his vehicle to a complete stop when suddenly and without warning the vehicle is pushed forward and into the vehicle traveling ahead of him due to the collision. Moreover, upon information and belief, data obtained from the vehicle owned by Space Ex show that the driver received an alert from the vehicle to grasp the steering wheel in the moments leading up to and before the crash.[5] This data has been forwarded to Plaintiff Medellin's accident reconstruction expert for his opinion on the matter.

Based on the foregoing, the argument that records concerning cell phone activity the night before and the morning of the crash are not relevant. The evidence obtained clearly shows that Plaintiff Medellin did nothing to bring about this crash. Based on the videos and the data from the Tesla, there is no evidence to suggest that (1) fatigue played any role in this crash, (2) that Plaintiff Medellin was contributorily negligent, or (3) that Plaintiff Medellin decelerated immediately before the crash. Second, Plaintiff Medellin's medical and billing records show that he did not seek urgent care within 24-hours after the crash, which have already been provided to defense counsel.[6] Plaintiff Medellin concedes that he did not contact any health professional within 24-hours after the crash.

However, most troubling is the Defendants' attempt to obtain any information concerning when Plaintiff Medellin contacted his attorney. Plaintiff would assert that any communications with his attorney are protected by the attorney-client privilege. The privilege encompasses the time, place, and date in which Plaintiff Medellin contacted his attorney.

Moreover, these particular tactics are abhorrent to the legal profession as a whole. The defense is attempting to weaponize Plaintiff's decision to obtain legal counsel. To allow such tactics could ultimately have a "chilling" effect to similarly situated individuals such as Plaintiff Medellin and deter them from seeking legal counsel. The profession should encourage individuals to seek counsel when they are faced with unfamiliar situations which may impact their rights in the future.

The defense has no authority to suggest that these particular tactics should be allowed. The case law cited by the defense is not analogous and relates to a case involving allegations of fraud against a law firm. *See* Frazier v. Runnels, et. al. No. CV 18-2340, 2019 WL 398930 (E.D. La.

---

[5] TESLA vehicle data: https://www.dropbox.com/s/ptbrjfdjhs7cr3o/2021-06-12.csv?dl=0
[6] On July 8, 2022, Plaintiff supplemented his responses to Defendants' written discovery requests, which included all of the medical and billing records related to the crash in question.

Jan. 31, 2019). For these reasons, the defense should not be allowed the prejudice the jury because Plaintiff Medellin contacted a lawyer.

With regard to communications between a client and a lawyer within the personal injury context, Justice Hecht provided a dissenting opinion related to attorney referrals to physicians for treatment.

> "The single question raised by this petition for mandamus is whether the attorney-client privilege protects a party from being required to disclose that her attorney referred her to a physician for treatment. Contrary to the district court, I would answer yes. The question is important, not only because, as the real party in interest states, it arises in many personal injury lawsuits, but because a rule requiring disclosure of such information is a significant incursion into the province of the attorney-client privilege."
> …
> "Requiring a client to disclose that her attorney referred her to a particular professional for services is a significant exception to the attorney-client privilege. I see no principled basis for restricting the rule's application to plaintiffs in personal injury cases. I would grant the petition for mandamus and direct the district court to vacate its order."

*In re Avila*, 22 S.W.3d 349, 351 (Tex. 2000).

Further, as it relates to cell phone discovery, there is a bevy of authority to suggest that the rules are not an invitation for the other party to engage in a fishing expedition in hopes of finding some piece of information solely for impeachment purposes. *See e.g., In re Indeco Sales, Inc.*, No. 09-14-00405-CV, 2014 WL 5490943, at *4 (Tex. App.—Beaumont Oct. 30, 2014, no pet.). Moreover, there is sufficient case law discussing limiting parameters as it relates to cell phone discovery. See e.g., *In re Padilla*, No. 03-18-00477-CV, 2018 WL 4087733, at *1 (Tex. App.—Austin Aug. 28, 2018, no pet.) (overturning the district court's order requiring production of cell-phone records from 14-days before and 14-day after the crash on the basis that there is no tendency to make a fact that is of consequence to the pleadings more or less probable than it would be without the evidence); *In re Moor*, No. 14-12-00933-CV, 2012 WL 5463193, at *1 (Tex. App.—Houston [14th Dist.] Nov. 8, 2012, no pet.) (where the pleadings asserted the relator's son was using a mobile phone at the time of the crash, the Court granted mandamus relief and vacated trial court's order requiring production of phone records for the date following the crash which

appeared to be an impermissible fishing expedition designed to paint relator and son in an unfavorable light); and *In re Indeco Sales, Inc.* (confirming the trial court's order that the production of the Plaintiff's cell phone would be overbroad, not properly limited in time and scope, and stating that the rules are not invitation for the other party to engage in a fishing expedition in hopes of finding some piece of information solely for impeachment purposes).

Aside from the issue before the Court, the defense has expressed concern that Plaintiff issued a subpoena for 744 hours of Morshedian's cell phone records. Doc. 19, 3. In his current pleading, Plaintiff Medellin has asserted that Defendant Space Ex failed to train and/or supervise Defendant Morshedian. Plaintiff's Amended Petition, hereinafter referred to as *Exhibit B*. The records sought may ultimately show that Defendant Morshedian had a habit and pattern of using his cell phone while driving during the course and scope of his employment for Defendant Space Ex. Notwithstanding, Plaintiff Medellin would have been more than willing to modify his subpoena if such a request had been made at the appropriate time.

With regard to conferring with defense counsel a few hours before filing Plaintiff's Motion to Quash, there is no authority to suggest that counsel did anything improper in this instance. Counsel was under a deadline and the close of day was approaching so time was of the essence. In any case, based on defense counsel's fixation with when and why Plaintiff Medellin sought counsel, it was relatively clear what the basis was for the 72-hour window. Counsel is willing and open to discussing limiting parameters but has not heard from defense counsel.

Ultimately, the records of the two-hour window immediately preceding and after the crash are sufficient to determine whether Plaintiff Medellin's phone usage played any role in the crash. As such, Plaintiff requests that either a protective order be entered into by the Court or the subpoena is modified to reflect the foregoing parameters. *See Fuller*, 2018 WL 10374819 at *2.

Respectfully submitted,
**BEGUM LAW GROUP**

By: /s/ *Mario A. Cisneros*
Mario A. Cisneros
Federal Bar No. 2601122
2401 Wild Flower, Suite B
Brownsville, Texas 78526
E-mail: mcisneros@texaslegalgroup.com
Tel. (956) 982-1800
Fax. (956) 982-8602

**ATTORNEY IN CHARGE FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I certify that on <u>October 19, 2022</u> a copy of Plaintiff's Reply was *electronically filed* on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for Defendants, Space Exploration Technologies, Corp., and Arion Morshedian.

***Via E-Service:*** <u>Michelle.Pector@morganlewis.com</u>
Michelle D. Pector
State Bar No. 24027726
Morgan, Lewis & Bockius LLP
1000 Louisiana, Suite 4000
Houston, Texas 77002
Tel. (713) 890-5000
Fax. (713) 890-5001
*Attorney for Defendants*

***Via E-Service:*** <u>doliveira@rofllp.com</u>
David Oliveira
State Bar No. 15254675
Roerig, Oliveira & Fisher, LLP
10225 N. 10th Street
McAllen, Texas 78504
Tel. (956) 393-6300
Fax. (956) 386-1625
*Attorney for Defendants*

***Via E-Service:*** <u>sjones@brock.law</u>
Scott P. Jones
Texas Bar No. 10955500
Southern District of Texas Bar No. 11023
Celia E. Guerra
Texas Bar No. 24069756
Southern District of Texas Bar No. 2108559
BROCK GUERRA STRANDMO DIMALINE JONES, P.C.
17339 Redland Road
San Antonio, Texas 78247
(210) 979-0100 Telephone
(210) 979-7810 Facsimile
*Co-Counsel for Defendant Arion Morshedian*

                                              <u>/s/ *Mario A. Cisneros*</u>
                                                Mario A. Cisneros