# EXHIBIT 4

Page 1

NO. 2021-CCL-00597

HUGO MEDELLIN,           ) IN THE COUNTY COURT
                         )
       Plaintiff,        )
                         )
VS.                      ) AT LAW NO. 3
                         )
ARION MORSHEDIAN and     )
SPACE EXPLORATION        )
TECHNOLOGIES CORP.,      ) CAMERON COUNTY, TEXAS

*******************************************************
          REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
                       HUGO MEDELLIN
                       AUGUST 2, 2022
*******************************************************

     REMOTE ORAL AND VIDEOTAPED DEPOSITION of HUGO
MEDELLIN, produced as a witness at the instance of the
Defendants, and duly sworn, was taken in the
above-styled and numbered cause on August 2, 2022,
from 10:59 a.m. to 5:06 p.m., before Heather L. Garza,
CSR, RPR, in and for the State of Texas, recorded by
machine shorthand, at the offices of HEATHER L. GARZA,
CSR, RPR, The Woodlands, Texas, pursuant to the Texas
Rules of Civil Procedure and the provisions stated on
the record or attached hereto; that the deposition
shall be read and signed before any notary public.

Page 2

```
 1          REMOTE APPEARANCES
 2
 3    FOR THE PLAINTIFF:
 4       Mr. Mario Cisneros
         BEGUM LAW GROUP
 5       2401 Wildflower Drive, Suite B
         Brownsville, Texas 78526
 6       (210) 468-8810
         advice@texaslegalgroup.com
 7
 8    FOR THE DEFENDANT SPACE EXPLORATION TECHNOLOGIES
      CORP.:
 9
         Ms. Michelle D. Pector
10       MORGAN, LEWIS, BOCKIUS LLP
         1000 Louisiana, Suite 4000
11       Houston, Texas 77002
         (713) 890-5000
12       michelle.pector@morganlewis.com
13       -and-
14       Mr. David G. Oliveira
         ROERIG, OLIVEIRA & FISHER, LLP
15       10225 N. 10th Street
         McAllen, Texas 78504
16       (956) 393-6300
17
18    FOR THE DEFENDANT ARION MORSHEDIAN:
19       Mr. Scott P. Jones
         BROCK GUERRA STRANDMO DIMALINE JONES, P.C.
20       17339 Redland Road
         San Antonio, Texas 78247
21       (210) 979-0100
         sjones@brock.law
22
23
24
25
```

Page 3

```
 1    VIDEOGRAPHER:
 2       Ms. Kayla Brown
 3
      ALSO PRESENT:
 4
         Ms. Sonia Couillard, Interpreter
 5       Mr. Christopher Cardaci
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1             EXAMINATION INDEX
 2    WITNESS:  HUGO MEDELLIN
 3    EXAMINATION                              PAGE
         BY MS. PECTOR                           7
 4       BY MR. JONES                          153
 5
 6    SIGNATURE REQUESTED                      157
 7
 8    REPORTER'S CERTIFICATION                 158
 9
10             EXHIBIT INDEX
11                       PAGE
      MEDELLIN EXHIBIT NO.1                     12
12       Defendants' Notice of Intent to take
         Oral and Videotaped Deposition of Hugo
13       Medellin
14    MEDELLIN EXHIBIT NO.2                     17
         Plaintiff's Amended Petition, Jury
15       Demand, Notice of Intent to Use
         Documents Pursuant to Texas Rules of
16       Civil Procedure, Rule 193.7, and
         Plaintiff's Request for Notice by
17       Defendant of Intent to Seek Admission of
         Criminal Convictions of Witnesses
18       Pursuant to Texas Rules of Evidence
         Rule 609(F)
19
      MEDELLIN EXHIBIT NO.3                     71
20       Photograph
21    MEDELLIN EXHIBIT NO.4                     74
         Photograph
22
      MEDELLIN EXHIBIT NO.5                     76
23       Photograph
24    MEDELLIN EXHIBIT NO.6                     77
         Photograph
25
```

Page 37

1  get to the client's address is when I grab my phone,
2  and I text the client.
3     Q.  You look at the app for directions while
4  you're driving, correct?
5     A.  Yes.
6     Q.  You would agree your eyes are not on the road
7  at all times when you're driving, correct?
8     A.  I would say no.
9     Q.  It's your testimony for -- to this jury that
10 when you are driving and looking at your directions
11 app, your eyes are on the road at the same time?
12    A.  I would say my answer was yes, and let me
13 tell you why.  It's because my phone holder is on the
14 same height as my eyes so when I'm looking at it, I'm
15 looking, too, at the road at the same time.
16    Q.  Is it your testimony that you believe it's
17 safe to look at applications on your phone while
18 you're driving?
19    A.  I'm not looking at apps.  I'm just looking at
20 the map to get there, and I would say that I'm just
21 looking at that map from the corner of my eyes without
22 taking my eyes off the road.
23    Q.  Is it your testimony that you believe it's
24 safe to look at maps while you're driving?
25        MR. CISNEROS:  Objection; form.

Page 38

1     A.  I would think that -- yes, I would think
2  that's safe because I have never collided because of
3  that.
4     Q.  (BY MS. PECTOR)  How long have you been
5  working for Domino's Pizza?
6     A.  Three years.
7     Q.  During the three years that you've been
8  working for Domino's Pizza, it was routine for you to
9  look at your phone while you were making deliveries,
10 correct?
11    A.  Yes.
12    Q.  You are still working for Domino's Pizza
13 today, correct?
14    A.  Yes.
15    Q.  You're still performing the same job duties
16 that you performed at the time of the accident,
17 correct?
18    A.  Correct.
19    Q.  You're still working the same number of hours
20 now that you worked prior to the accident for
21 Domino's, correct?
22    A.  Correct.
23    Q.  Is it correct that you are not seeking any
24 lost wages in this case?
25    A.  To be honest with you, I stopped working for

Page 39

1  a few days after the accident because I didn't have a
2  car.
3     Q.  Where was your car?
4     A.  It was at my friend's house because she lives
5  close to the job.
6     Q.  You drove your car away from the scene after
7  the accident, correct?
8     A.  Yes.
9     Q.  You were capable of driving your car after
10 the accident, correct?
11    A.  Yes.
12    Q.  You did not request any medical attention at
13 the scene of the accident, correct?
14    A.  Correct.
15    Q.  You did not go see a doctor on the day of the
16 accident, correct?
17    A.  Correct.
18    Q.  You did not seek any type of medical
19 treatment on the day of the accident, correct?
20    A.  Correct.
21    Q.  After the accident, you went back to Domino's
22 Pizza, correct?
23    A.  Not back to work.
24    Q.  Where did you go?
25    A.  Well, I went back to the place, but I told

Page 40

1  them that I was not going to be able to work because I
2  was scared and I didn't feel well and after that, we
3  went to my friend's house.
4     Q.  You did go back to the Domino's Pizza store
5  after the accident, correct?
6     A.  I didn't enter the building.  I went to the
7  parking lot.
8     Q.  Why did you go to the parking lot?
9     A.  To tell them that I was not going to be able
10 to work because I was not feeling good, but they were
11 the ones that came out, and they asked me how I was
12 feeling and I told them that I was not feeling good
13 and -- and they -- they were the ones that told me
14 that that was okay, that I should not worry about it.
15    Q.  Who did you speak to at Domino's?
16        THE INTERPRETER:  I'm sorry.  The
17 interpreter did not hear him.
18    A.  I talked to the manager assistant, one of
19 them.
20    Q.  (BY MS. PECTOR)  What was the manager
21 assistant's name?
22    A.  Jesina Vasquez.
23    Q.  How do you spell her first name?
24    A.  Gosh, I -- it's, like, J-E-S-I-N-A.
25    Q.  Does Jesina Vasquez still work for Domino's

Page 49

1  from their store, correct?
2         MR. CISNEROS:  Objection; form.
3     A.  I would say -- I would say no.  That's the
4  reason why I have insurance covering my car, and maybe
5  when you are at the store, they have coverage.
6     Q.  (BY MS. PECTOR)  You agree that when you're
7  driving, that's your own personal responsibility,
8  correct?
9         MR. CISNEROS:  Objection; form.
10    A.  I don't understand.  You know, if I were the
11 -- I were being boating in an accident, that would be
12 my responsibility.
13    Q.  (BY MS. PECTOR)  Did the driver in front of
14 you assert any claims against you?
15    A.  I don't understand.  What do you mean
16 by "claims"?
17    Q.  The accident that you were involved in was a
18 four-car accident, correct?
19    A.  Yes, correct.
20    Q.  The car in front of you was a Nissan,
21 correct?
22    A.  I believe so.
23    Q.  Did the driver of that Nissan sue you for
24 hitting him?
25    A.  No.  He is aware that I was the one who got

Page 50

1  hit, and that's the reason why everything happened.
2     Q.  You are aware that driver was not injured in
3  the accident, correct?
4     A.  I don't know because that day, well, that was
5  the only day when I saw him.  I have not seen him
6  after the accident.
7     Q.  Has that driver asked you to pay any of his
8  damages to his vehicle?
9     A.  No.
10    Q.  You agree that if he were to ask you to pay
11 for those damages, that Domino's would not be
12 responsible, correct?
13    A.  I believe that.
14    Q.  Did Domino's provide you any training to be a
15 pizza driver?
16    A.  Correct.
17    Q.  You were not provided with any training on
18 how to drive by Domino's, correct?
19    A.  They showed me videos regarding how to drive.
20    Q.  What videos?
21    A.  Well, those are part of the welcome training
22 videos that we have to watch, and that includes how to
23 drive, to respect signs, respect speed limits, and all
24 of that.
25    Q.  Driving is your job duty at Domino's,

Page 51

1  correct?
2     A.  That, and also I have to help at the store.
3     Q.  What do you do at the store?
4     A.  Sometimes I have to answer phones, help with
5  clients, and I do help some clients sometimes there at
6  the store.
7     Q.  You are still able and capable of performing
8  all those duties for Domino's, correct?
9     A.  Well, when I mentioned -- with what I
10 mentioned, yes, I can do that, but in the past, I used
11 to also help with the dishes and lifting dishes and
12 that no longer -- I do no longer perform.
13    Q.  Do you have any paperwork from Domino's that
14 shows any of your job duties changed?
15    A.  No.
16    Q.  Who is your manager or your boss at Domino's?
17    A.  His name is Alexis Sandoval.
18    Q.  Can you spell that?
19    A.  Alexis is spelled A-L-E-X-I-S, and Sandoval
20 is S-A-N-D-O-V-A-L.
21    Q.  When the accident occurred, did you call
22 anybody from the scene of the accident?
23    A.  Yes.  I called the Domino's store.
24    Q.  Did you call them immediately after the
25 accident?

Page 52

1     A.  I believe I called them maybe five to seven
2  minutes after.
3     Q.  Who did you speak to?
4     A.  I don't recall at the moment.
5     Q.  Who else did you call?
6     A.  When I was at the scene of the accident,
7  nobody else.  I don't recall.
8     Q.  Did you call your wife?
9     A.  I don't think so.  I didn't want to scare
10 her.
11    Q.  Did you talk to the other drivers at the
12 scene?
13    A.  Yes.  You know, the driver that hit me, he
14 just told me that he was -- he was sorry, and that
15 there had been an accident.  The driver that was in
16 front of me, he was upset.  He was just asking me why
17 I had hit him, and he was -- until he saw what really
18 happened, and it was then that he -- that is when he
19 left me alone.
20    Q.  How did he see what really happened?
21    A.  The driver that was in front start -- got out
22 of his car, and he was taking things out of his car,
23 and from the distance saw the car that hit me.
24    Q.  Each of the drivers in the four vehicles were
25 able to exit their vehicles after the accident,

13 (Pages 49 to 52)

Page 53

1  correct?
2       A.  Yes.
3       Q.  Each of the drivers were able to walk around
4  the scene after the accident, correct?
5       A.  Well, the one that had hit me, I didn't see
6  him at any point walking around the scene.  Myself, I
7  stayed in my car for -- I didn't get out immediately.
8  I stayed in my car for, like, a couple minutes, and
9  then I got out and stood on the side.  The one that
10 was in front, yeah, he was the one who got out of his
11 car almost sprinting out almost immediately, and the
12 third one, I don't think she got out of her car.
13 Nothing happened to her.
14      Q.  Nobody needed medical attention at the scene,
15 correct?
16      A.  Not in my opinion.
17      Q.  No ambulance came to the scene, correct?
18      A.  I don't think so.
19      Q.  You did not overhear anyone asking for
20 medical help, correct?
21      A.  No, I don't think so.
22      Q.  Each of the drivers drove their vehicles away
23 from the scene, correct?
24      A.  I don't know.
25      Q.  You did not see any tow trucks take any

Page 54

1  vehicles from the scene, correct?
2       A.  No.
3       Q.  Were you the first to leave the scene?
4       A.  No.
5       Q.  What cars did you see drive away from the
6  scene before you left?
7       A.  The pickup.  That was the one that was in
8  front.
9       Q.  There was no damage to the pickup, correct?
10      A.  Just a small scratch.
11      Q.  Nothing else, correct?
12      A.  Correct.
13      Q.  Did you see the vehicle in front of you leave
14 the scene?
15      A.  No.
16      Q.  You left first?
17      A.  Before the car that was in front?
18      Q.  Yes.
19      A.  I believe so.
20      Q.  You spoke to the officer who was at the
21 scene, correct?
22      A.  Yes.
23      Q.  You did not report any injury to him,
24 correct?
25      A.  Correct.

Page 55

1       Q.  How long were you at the scene after the
2  accident?
3       A.  I believe less than an hour.
4       Q.  Did you take any pictures at the scene?
5       A.  Yes.
6       Q.  Approximately how many pictures did you take?
7       A.  Maybe four.
8       Q.  What did you take pictures of?
9       A.  I took pictures of the four cars, the four
10 cars that were in the accident.
11      Q.  Do you still have those pictures?
12      A.  The ones of my car, I believe so.
13      Q.  Did you discard the pictures you took of the
14 accident?
15      A.  I don't know.  I have to check if they are
16 still there.
17      Q.  Did you take any pictures of the drivers who
18 were involved in the accident?
19      A.  No.
20      Q.  Is it correct that you have not searched your
21 phone or other devices to see if you have pictures
22 from the accident?
23      A.  Not in this month or this year.
24      Q.  I'm going to instruct you, Mr. Medellin, to
25 preserve any photos that you have from the accident

Page 56

1  and to provide them to your counsel.  Do you
2  understand that?
3       A.  Yes.
4       Q.  Mr. Medellin, were you wearing your seatbelt
5  at the time of the accident?
6       A.  Yes.
7           MR. CISNEROS:  We've been going for
8  about two hours.  Can we take a 15-minute break,
9  please?
10          MS. PECTOR:  Yeah, sure.  Let me just
11 ask one more question, and then we can take a break.
12      Q.  (BY MS. PECTOR)  Did your airbag deploy after
13 the accident?
14      A.  No.
15          MS. PECTOR:  Okay.  We can take a break.
16 How long do you need, Mario?
17          MR. CISNEROS:  15 minutes.
18          MS. PECTOR:  Okay.
19          THE VIDEOGRAPHER:  The time is 12:53
20 p.m.  We're off the record.
21              (Break.)
22          THE VIDEOGRAPHER:  The time is 1:12 p.m.
23 We're on the record.
24      Q.  (BY MS. PECTOR)  Mr. Medellin, we're back from
25 our break.  Are you ready to proceed?

14 (Pages 53 to 56)

Page 157

```
 1      I, HUGO MEDELLIN, have read the foregoing
     deposition and hereby affix my signature that same is
 2   true and correct, except as noted on the previous
     page(s), and that I am signing this before a Notary
 3   Public.
 4
 5
 6        _____
          HUGO MEDELLIN
 7
 8   STATE OF T E X A S    *
 9   COUNTY OF _____   *
10
          Before me, _____, on
11   this day personally appeared HUGO MEDELLIN, known to
     me, or proved to me under oath or through
12   _____ (description of identity card or
     other document), to be the person whose name is
13   subscribed to the foregoing instrument and
     acknowledged to me that they executed the same for the
14   purposes and consideration therein expressed.
15        Given under my hand and seal of office on
     this, the _____ day of _____, 2022.
16
17
18        _____
          NOTARY PUBLIC IN AND FOR THE
19        STATE OF TEXAS
20   My Commission Expires: _____
21
22
23
24
25   JOB NO. 72109
```

Page 158

```
 1              NO. 2021-CCL-00597
 2
     HUGO MEDELLIN,         )  IN THE COUNTY COURT
 3                          )
          Plaintiff,        )
 4                          )
     VS.                    )  AT LAW NO. 3
 5                          )
     ARION MORSHEDIAN and   )
 6   SPACE EXPLORATION      )
     TECHNOLOGIES CORP.,    )  CAMERON COUNTY, TEXAS
 7
 8          REPORTER'S CERTIFICATION
     ORAL AND VIDEOTAPED DEPOSITION OF HUGO MEDELLIN
 9              AUGUST 2, 2022
10      I, Heather L. Garza, a Certified Shorthand
11   Reporter in and for the State of Texas, hereby certify
12   to the following:
13      That the witness, HUGO MEDELLIN, was remotely duly
14   sworn by the officer and that the transcript of the
15   oral deposition is a true record of the testimony
16   given by the witness;
17      That the deposition transcript was submitted on
18   _____, 2022, to the witness, or to the
19   attorney for the witness, for examination, signature,
20   and return to Worldwide Court Reporters, Inc., by
21   _____, 2022;
22      That the amount of time used by each party at the
23   deposition is as follows:
24        MS. PECTOR - 05:22:52
          MR. CISNEROS - 00:00:00
25        MR. JONES - 00:04:50
```

Page 159

```
 1      That pursuant to information given to
 2   the deposition officer at the time said testimony was
 3   taken, the following includes counsel for all parties
 4   of record:
 5        Mr. Mario Cisneros, Attorney for Plaintiff.
          Ms. Michelle D. Pector and Mr. David G.
 6   Oliveira, Attorneys for Defendant Space Exploration
     Technologies Corporation.
 7        Mr. Scott P. Jones, Attorney for Defendant
     Arion Morshedian.
 8
 9      I further certify that I am neither counsel for,
10   related to, nor employed by any of the parties or
11   attorneys in the action in which this proceeding was
12   taken, and further that I am not financially or
13   otherwise interested in the outcome of the action.
14      Further certification requirements pursuant to
15   Rule 203 of TRCP will be certified to after they have
16   occurred.
17      Certified to by me this 18th day of August, 2022.
18
19
20
21
22        _____
          Heather L. Garza, CSR NO. 8262
23        Expiration Date:  04-30-24
24
25
```

Page 160

```
 1   FURTHER CERTIFICATION BY COURT REPORTING FIRM
                UNDER RULE 203 TRCP
 2
 3      The original deposition was _____ was not _____
 4   returned to the deposition officer;
 5      If returned, the attached Changes and Signature
 6   page contains any changes and the reasons therefor;
 7      If returned, the original deposition was delivered
 8   to Ms. Michelle D. Pector, Custodial Attorney;
 9      The deposition officer's charges for preparing
10   this deposition and any copies of exhibits are as
11   follows:
12        Court Costs $_____
13        To Be Paid By:  Ms. Michelle D. Pector
14      That a copy of this certificate was served on all
15   parties shown herein and filed with the Clerk.
16      Certified to by me this _____ day of _____,
17   2022.
18        _____
          Worldwide Court Reporters, Inc.
19        Firm Registration No. 223
          3000 Weslayan, Suite 235
20        Houston, TX 77027
          713-572-2000
21
22
23
24
25
```