IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| HUGO MEDELLIN | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:22-cv-00084 |
| | § | |
| ARION MORSHEDIAN and SPACE | § | |
| EXPLORATION TECHNOLOGIES | § | |
| CORP. | § | |
| | § | |
| Defendants. | § | |

**SPACE EXPLORATION TECHNOLOGIES CORPORATION'S
RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE
<u>TESTIMONY AND REPORT OF ELIZABETH MICHELLE ADDISON</u>**

## TABLE OF CONTENTS

Page

I. SUMMARY OF THE ARGUMENT ................................................................................. 1

II. STATEMENT OF THE ISSUES ....................................................................................... 1

III. LEGAL STANDARD ......................................................................................................... 2

IV. ARGUMENT & AUTHORITIES ..................................................................................... 2

    A. Addison's Opinions are Reliable ............................................................................. 3

        i. Addison Details Her Methodology in Her Report, Including Her Reliance on Context 4, Which Has Been Found to be a Reliable Basis for Similar Expert Opinions ............................................................... 3

        ii. Addison's Testimony Using Find-A-Code Does Not Run Afoul of the Collateral Source Rule ............................................................................ 5

        iii. Plaintiff's Other Challenges to Addison's Methodology Go to Weight, Not Admissibility ................................................................................ 7

    B. Addison is Qualified to Opine on the Reasonableness of Plaintiff's Medical Charges ........................................................................................................ 8

        i. Addison is Undoubtedly Qualified as a Medical Coding and Billing Expert ............................................................................................... 8

        ii. Plaintiff's Challenges to Addison's Qualifications Do Not Support Exclusion .................................................................................................. 10

V. REQUEST FOR RELIEF ................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abadie v. Target Corp. of Minn.*,
   No. 18-CV-14112, 2021 WL 5029462 (E.D. La. June 22, 2021)..............................................6

*Bailey v. Comcast of Louisiana/Mississippi/Texas, LLC*,
   No. 3:22-CV-147, 2023 WL 3205337 (S.D. Miss. May 2, 2023) ............................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993)................................................................................................... passim

*Factory Mut. Ins. Co. v. Alon USA L.P.*,
   705 F.3d 518 (5th Cir. 2013) ................................................................................................10

*Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*,
   No. 5:19-CV-156, 2021 WL 3816338 (S.D. Tex. July 22, 2021) ............................................9

*Grant v. CRST Expedited, Inc.*,
   No. 1:18-CV-433, 2021 WL 1151560 (E.D. Tex. Jan. 28, 2021) ............................................6

*Haygood v. De Escabedo*,
   356 S.W.3d 390 (Tex. 2011)...................................................................................................5

*Koenig v. Beekmans*,
   No. 5:15-CV-0822, 2017 WL 7732809 (W.D. Tex. Mar. 23, 2017)...............................4, 7, 11

*MedARC, LLC v. Scott & White Health Plan*,
   618 F.Supp.3d 365 (N.D. Tex. 2022) ......................................................................................9

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (5th Cir. 2003) ................................................................................................2

*Perez v. Boecken*,
   No. 5:19-CV-00375, 2020 WL 3074420 (W.D. Tex. June 10, 2020) ............................ passim

*Pipitone v. Biomatrix, Inc.*,
   288 F.3d 239 (5th Cir. 2002) ..................................................................................................2

*Primrose Operating Co. v. Nat'l Am. Ins. Co.*,
   382 F.3d 546 (5th Cir. 2004) ...........................................................................................4, 11

*Taylor v. Am. Fabritech, Inc.*,
   132 S.W.3d 613 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) ...................................5

*United States v. Wen Chyu Liu*,
  716 F.3d 159 (5th Cir. 2013) ..................................................................................................10

*Villanueva Carreon v. Gonzales Gamez*,
  No. 5:19-CV-124, 2021 WL 3604843 (S.D. Tex. Mar. 24, 2021) ...........................................10

*Williams v. B&B Elec. & Util. Contractors, Inc.*,
  No. 2:19-CV-00325, 2022 WL 6610128 (S.D. Tex. Feb. 8, 2022) ..............................4, 7, 9, 10

*Williams v. Manitowoc Cranes, LLC*,
  898 F.3d 607 (5th Cir. 2018) ...............................................................................................2, 8

**Other Authorities**

Fed. R. Evid. 402 ...............................................................................................................................1

Fed. R. Evid. 702 ...............................................................................................................................1

## I.  SUMMARY OF THE ARGUMENT

Plaintiff Hugo Medellin ("Plaintiff") has moved to exclude the testimony and report of Defendants Arion Morshedian and Space Exploration Technologies Corporation's (collectively, "Defendants") retained expert Elizabeth Michelle Addison, contesting Addison's qualifications and the reliability of her opinions under the standard outlined in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dkt. No. 27. Plaintiff's arguments for excluding Addison's testimony and opinions are unavailing. Addison's qualifications, which stem from her over 30 years of experience in the healthcare industry and over 25 years of experience in medical billing and coding, are beyond dispute. And Plaintiff's attacks on Addison's methodology—which actually contest the reliability of the medical coding databases that inform Addison's opinions—are routinely rejected by courts within this District and the Fifth Circuit. Accordingly, the Court should deny Plaintiff's motion.

## II.  STATEMENT OF THE ISSUES

The sole issue for the Court's consideration is whether Addison's testimony and report should be excluded under the principles outlined in Federal Rule of Evidence 702 and *Daubert*, 509 U.S. 579. Plaintiff's primary challenges to Addison's testimony and report are that (i) her opinions are not reliable, and (ii) she is not qualified to opine on the reasonableness of Plaintiff's medical charges. *See* Dkt. No. 27. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) (quoting Fed. R. Evid. 702 advisory committee's note). A trial court's decision to admit or exclude expert evidence is reviewed for abuse of discretion. *Id.* at 293.

1

### III.     LEGAL STANDARD

All relevant evidence is admissible, unless specifically excepted by another law or rule. Fed. R. Evid. 402.  Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  In evaluating an expert's testimony under Rule 702, the court takes on a "gatekeeping role" and makes a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."  *Daubert*, 509 U.S. at 592–93.  The proponent of expert testimony need only demonstrate admissibility by a preponderance of the evidence.  *Id.* at 592.  While the court has broad discretion whether to exclude expert testimony, "the trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system."  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting Fed. R. Evid. 702 advisory committee's note).  And the court may not "judge the expert conclusions themselves." *Williams v. Manitowoc Cranes, LLC*, 898 F.3d 607, 623 (5th Cir. 2018) (quotation and emphasis omitted); *Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (5th Cir. 2003) ("[I]t is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.").

### IV.     ARGUMENT & AUTHORITIES

Plaintiff's challenges to Addison's testimony and opinions are entirely insufficient to exclude any of her testimony under *Daubert* and, at most, are challenges to the weight and credibility to be given her testimony at trial.  The Court should deny Plaintiff's motion.

### A. Addison's Opinions are Reliable

In her report, Addison consults the medical billing databases "Find-A-Code" and "Context 4 Healthcare" ("Context 4") in opining on whether Plaintiff's billed medical expenses exceed the usual, customary, and reasonable ("UCR") amount for such services. Dkt. No. 27-1 ("Addison Rpt.") at 5–9.[1] Plaintiff contends that Addison's opinions based on Context 4 are not reliable and should be excluded because Addison allegedly lacks knowledge of the underlying methodology utilized in creating the Context 4 database. Dkt. No. 27 at 4. Plaintiff also contends that because Addison's methodology for analyzing information from Find-A-Code includes references to US Department of Veterans Administration benefits and Medicare reimbursement rates, it runs afoul of the collateral source rule and must be excluded. *Id.* at 4–7. Plaintiff's arguments are unavailing and do not support excluding Addison's testimony.

#### i. Addison Details Her Methodology in Her Report, Including Her Reliance on Context 4, Which Has Been Found to be a Reliable Basis for Similar Expert Opinions

Plaintiff contends that "[w]ithout being able to discuss a methodology or how Context 4 came up with what she deems to be a UCR charge, [Addison's] testimony would fail to assist the trier of fact." Dkt. No. 27 at 4. Plaintiff's argument is misplaced for several reasons.

***First***, Addison expressly provides her methodology in her report, which uses her specialized expertise to interpret and analyze Plaintiff's medical and billing records. *See* Addison Rpt. at 5–6; *see also id.* at 7–9. Addison begins her analysis by reviewing Plaintiff's medical documentation and medical billing records, identifying the industry-standard code applied in each instance, and comparing that code to the medical documentation to determine whether the coding

---

[1] Defendants have served five Expert Cost and Billing Analyses from Addison, which Plaintiff combined into one exhibit attached to the Motion. Dkt. No. 27-1. For ease of reference, Defendants will refer to this combined exhibit as the "Addison Rpt."

-3-

applied is correct and supported by the medical documentation. *Id.* at 5. If Addison determines that the appropriate codes were used, she then compares the billed charges for that service with the UCR for the geographic area and date when the services were provided. *Id.* In determining the UCR, Addison consults multiple reliable and industry-standard resources, including Context 4. *Id.*

**Second**, contrary to Plaintiff's assertions, Addison is not simply regurgitating medical billing information obtained from Context 4 with no analysis or methodology applied. Dkt. No. 27 at 4. Using Context 4 to identify and evaluate the UCR charge for a particular geographic area and time period is a "standard and accepted practice in the medical community" and requires a user to be "proficient in the use of medical coding . . . to properly and accurate[ly] analyze and interpret the data." Addison Rpt. At 5–6. Addison details in her report how her background, experience, and training in medical coding, including knowledge of "the use of modifiers and when bundling may be appropriate, billing interpretation, and the different medical fee schedules," allows her to correctly utilize the information obtained from Context 4 and similar databases. *Id.*

**Third**, Plaintiff's contention that Addison is required to know the specific methodology underlying Context 4 is meritless and has been explicitly rejected by federal district courts in Texas. Specifically, Context 4 has been found to be a reliable basis for a medical billing expert's opinion. *Perez v. Boecken*, No. 5:19-CV-00375, 2020 WL 3074420, at *12 (W.D. Tex. June 10, 2020) ("Dickison's use of the C4H [Context 4] database does not render her methodology unreliable."). And similar medical billing/coding databases are routinely found to be reliable sources of data for expert analysis like Addison's. *See Williams v. B&B Elec. & Util. Contractors, Inc.*, No. 2:19-CV-00325, 2022 WL 6610128, at *3 (S.D. Tex. Feb. 8, 2022) (denying *Daubert* motion and holding that medical billing databases "are considered reliable in the field and provide

data on which billing experts reasonably rely"); *see also Koenig v. Beekmans*, No. 5:15-CV-0822, 2017 WL 7732809, at *3 (W.D. Tex. Mar. 23, 2017) ("Defendants' argument that the Truven Health Analytics database is unreliable or constitutes an improper methodology is unsupported.").

Indeed, Plaintiff does not explain why he contends Context 4 is unreliable. Dkt. No. 27 at 4. Plaintiff merely argues that an expert cannot rely on a database without having any knowledge of the database's underlying methodology. *Id.* But "questions relating to the bases and sources of an expert's opinion affect the **weight** to be assigned that opinion rather than its **admissibility** and should be left for the jury's consideration." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (emphasis in original) (citation omitted). And Plaintiff "has not shown that there is any inaccuracy in [Addison's] work"—indeed, the methods described in Addison's report "generally constitutes reliable expert analysis." *Williams*, 2022 WL 6610128, at *3 (rejecting nearly identical arguments challenging medical billing and coding expert's methodology based on use of databases).

      ii.      **Addison's Testimony Using Find-A-Code Does Not Run Afoul of the Collateral Source Rule**

Plaintiff next contends that Addison's testimony relying upon information from Find-A-Code "will involve discussion of US Department of Veterans Administration benefits and Medicare reimbursement rates or allowables" and is "an attempt to backdoor a violation" of the collateral source rule. Dkt. No. 27 at 4. Plaintiff argues that any such testimony should be prohibited and, because this discussion of alleged "collateral sources" is central to Addison's methodology, "[w]ithout being able to detail a methodology," Addison's testimony should be excluded. *Id.* at 7. Plaintiff's argument misunderstands and misapplies the collateral source rule.

The collateral source rule generally prohibits a tortfeasor from obtaining the benefit of or introducing into evidence the existence of payments to the injured party from third-party sources.

*Taylor v. Am. Fabritech, Inc.,* 132 S.W.3d 613, 626 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The guiding principle underlying the collateral source rule is "the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor." *Haygood v. De Escabedo*, 356 S.W.3d 390, 395 (Tex. 2011) (quoting Restatement of Torts (Second) § 920A, cmt. b) (quotation marks omitted).

The collateral source rule "has no applicability to [Addison's] proposed expert testimony." *Perez*, 2020 WL 3074420, at *13. In rejecting identical arguments to those Plaintiff makes here, the *Perez* court explained:

> Neely opines that the "estimated charges for surgery by Dr. Leonard, and the actual billed charges by Foundation Surgical Hospital" for Plaintiff are "excessive." One of the bases of Neely's opinion is his familiarity "with the usual and customary payments by Medicare and commercial health insurance companies . . . for surgical procedures of this type." Neely does not offer evidence of "benefits received by [Plaintiff] from someone else." Plaintiff's objection to Neely's opinion goes to the "bases and sources" of the opinion, not to inadmissible evidence of a collateral source of payment to Plaintiff in this case. Plaintiff is entitled to question the weight assigned to Neely's opinion, but ultimately such a dispute is "left for the jury's consideration."

*Id.* (citing *Haygood*, 356 S.W.3d at 394) (internal citations omitted). The same logic applies here.[2] Addison does not discuss or offer any evidence of benefits received by or payments made to Plaintiff by someone else. Instead, she references and discusses the average payments made by various sources, such as Medicare or the US Department of Veterans Administration, for such medical services and procedures and identifies the UCR amount for that service or procedure in that geographic area. *See* Addison Rpt. at 7–9. Because Plaintiff's objection to Addison's use of

---

[2] *Perez* has also been cited by multiple courts in holding that the collateral source rule did not prohibit expert testimony regarding UCR charges. *See Abadie v. Target Corp. of Minn.*, No. 18-CV-14112, 2021 WL 5029462, at *4 (E.D. La. June 22, 2021) ("Kocke's testimony is not that plaintiffs' recovery should be reduced because of payment by an independent source. Instead, Kocke's report states that Dr. Casey's quoted price is unreasonable because it does not reflect the prevailing charge in the geographic area, or the payment that providers actually receive."); *Bailey v. Comcast of Louisiana/Mississippi/Texas, LLC*, No. 3:22-CV-147, 2023 WL 3205337, at *4 (S.D. Miss. May 2, 2023) (same).

Find-A-Code "goes to the bases and sources of [her] opinion, not to inadmissible evidence of a collateral source of payment to Plaintiff in this case," Plaintiff's motion should be denied and Addison's opinions and testimony permitted. *Perez*, 2020 WL 3074420, at *13; *see also Grant v. CRST Expedited, Inc.*, No. 1:18-CV-433, 2021 WL 1151560, at *11 n.11 (E.D. Tex. Jan. 28, 2021) (same).

      iii.      **Plaintiff's Other Challenges to Addison's Methodology Go to Weight, Not Admissibility**

Lastly, Plaintiff asks the Court to "consider whether Addison's work has ever been subjected to peer review" and "deem Addison's testimony unreliable" based on her status as a Juris Medicus employee. Dkt. No. 27 at 7. These last-ditch efforts at excluding Addison's testimony and opinions are likewise unavailing.

Plaintiff's complaint that Addison's analysis has not been peer-reviewed merely refashions its attacks against the use of databases like Context 4 and Find-A-Code discussed above. The use of databases does not render an expert's methodology unreliable. *See Perez*, 2020 WL 3074420, at *5; *see also Koenig*, 2017 WL 7732809, at *3. Similar arguments that a medical billing expert's methods were unreliable because they were, *inter alia*, not based on peer reviewed literature, not tested for accuracy, and merely applied medical billing data pulled from a database have been rejected in this context. *See Williams*, 2022 WL 6610128, at *3 (finding that billing expert's methodology, which included using "database source information, along with statistical methods, to render what is considered usual and customary fees for medical services provided" was "reliable expert analysis"). And, even if Plaintiff's criticisms were not unfounded (they are), they go to the "bases and sources of an expert's opinion" and "affect the weight of the evidence rather than its admissibility." *Koenig*, 2017 WL 7732809, at *3.

Similarly, Plaintiff's objection to Addison as a proverbial "hired gun" goes to the weight and credibility—not admissibility—of her opinions. *Williams*, 2022 WL 6610128, at *3. It also overlooks the 20 years of experience detailed in Addison's CV utilizing her medical billing expertise outside of litigation. *See id.* (rejecting identical arguments where expert had "worked in areas outside of litigation such that she is not simply a hired gun").

For the reasons set forth above, Plaintiff's motion is without merit and should be denied.

### B. Addison is Qualified to Opine on the Reasonableness of Plaintiff's Medical Charges

Plaintiff also attacks Addison's qualifications, alleging that Addison "failed to offer evidence that she is qualified to challenge Plaintiff's medical bills." Dkt. No. 27 at 7. Plaintiff concedes that Addison "clearly has qualifications" regarding medical coding and billing and reasonable charges for medical services. *Id.* at 7–8. But Plaintiff contends that because Addison "is not a medical doctor or a medical provider" and does not have experience with medical charges specifically in the Rio Grande Valley area, where Plaintiff received his medical treatment, she is not qualified to opine on the UCR charges for such treatment. *Id.* at 8. Further, Plaintiff argues that Addison is unqualified because her report "does not recite any facts that demonstrate that she has knowledge of the billing practices used by the facilities and treatment providers that rendered care and services to Plaintiff" and she did not "create[] the databases upon which her opinions rest." *Id.* Each of Plaintiff's challenges to Addison's qualifications are unfounded and do not support exclusion under *Daubert*.

### i. Addison is Undoubtedly Qualified as a Medical Coding and Billing Expert

As an initial matter, Addison's qualifications to render opinions regarding the UCR charges for Plaintiff's medical care are beyond dispute. Addison has been a Certified Professional Coder (CPC) with the American Academy of Professional Coders (AAPC) since 2004, a certification that

-8-

requires 36 hours of continuing education and training every two years. Addison Rpt. at 1. She completed coursework in Healthcare and Management at Alamo Colleges from 2006 through 2013 that included human anatomy & physiology, advanced medical terminology, International Classification of Diseases diagnostic/procedural and Current Procedural Terminology coding, health data content and structure, ambulatory coding, and computers in healthcare. *Id.* Overall, Addison has over 30 years of experience in the healthcare field, including 25 years specifically in medical coding and billing review. *Id.* at 1–4; *see also* Addison Rpt. Ex. A (Addison CV). And the Context 4 and Find-A-Code databases utilized by Addison in her analysis of Plaintiff's medical charges require users to be proficient in medical coding, billing interpretation, and different medical fee schedules to properly and accurate analyze and interpret the data—expertise that Addison has through her decades of training, education, and experience. Addison Rpt. at 5–6.

Experts with similar qualifications are routinely found to be qualified to render opinions regarding UCR medical charges. For example, the court in *Williams* found that the expert at issue had demonstrated an expertise in medical billing where she: (i) had decades of education, training, and experience in the healthcare field; (ii) held a Certificate in Documentation Coding from St. Philips College; (iii) had taken courses in human anatomy and physiology, pathophysiology, pharmacology, advanced medical terminology, International Classification of Diseases diagnostic/procedural and Current Procedural Technology coding, healthcare statistics, and legal and ethical aspects of healthcare; and (iv) was a Certified Professional Coder (CPC) with the American Academy of Professional Coders (AAPC). 2022 WL 6610128, at *2. Similarly, the court in *Perez* held that an expert was qualified to testify regarding the reasonableness of a plaintiff's medical charges where she had "over 22 years of experience in the healthcare field, 14 of those specifically in medical billing review, coding, and auditing," was a Certified Professional

Coder with the American Academy of Professional Coders, and relied on the Context 4 database in her report, which "requires the user to be proficient in the use of CPT codes, the use of CPT modifiers, billing interpretation, and the different medical fee schedules." 2020 WL 3074420, at *11; *cf. Gonzalez v. Inter Mexicana De Transporte S.A. de C.V.*, No. 5:19-CV-156, 2021 WL 3816338, at *3 (S.D. Tex. July 22, 2021) ("Additionally, unlike the expert in *Perez*, Guitreau has no relevant certifications or accreditations from the American Association of Professional Coders or any equivalent organization.").

      ii.  **Plaintiff's Challenges to Addison's Qualifications Do Not Support Exclusion**

Plaintiff's criticism that Addison is not a medical doctor or medical provider is irrelevant. "Texas courts have found an expert qualified to provide opinion testimony on the reasonableness of medical charges where the expert is not a medical provider, or where the expert relies on data from a database to support their opinion." *Perez*, 2020 WL 3074420, at *11 (citations omitted); *MedARC, LLC v. Scott & White Health Plan*, 618 F.Supp.3d 365, 372 (N.D. Tex. 2022) (citing *Perez*); *Williams*, 2022 WL 6610128, at *2 ("The Court finds that Gonzalez has demonstrated an expertise in medical billing, which does not require a license to practice medicine or nursing.").

And the fact that Addison did not create the databases she relies upon for her opinions "does not somehow disqualify her from testifying as an expert." *Perez*, 2020 WL 3074420, at *11; *Villanueva Carreon v. Gonzales Gamez*, No. 5:19-CV-124, 2021 WL 3604843, at *6 (S.D. Tex. Mar. 24, 2021) ("The Court agrees with the holding in *Perez* and other cases that an expert witness testifying on the reasonableness of medical charges . . . can rely on data from a database to support their opinion."). As courts have regularly found, and as Addison confirms in her report (Addison Rpt. at 5–9), these databases "are considered reliable in the field and provide data on which billing experts reasonably rely." *Williams*, 2022 WL 6610128, at *3; *see also Factory Mut. Ins. Co. v.*

*Alon USA L.P.*, 705 F.3d 518, 525 (5th Cir. 2013) ("Miles did clearly state that the sort of information relied upon here—the opinions of others—is the sort of information reasonably relied upon by appraisers.").

Plaintiff also contends that Addison's report does not establish her knowledge and experience regarding medical charges and billing practices used by the facilities and providers that rendered care to Plaintiff in the Rio Grande Valley. Dkt. No. 27 at 8. But the *Daubert* standard does not require such an exacting level of specialization. "[A]n expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168–69 (5th Cir. 2013) (internal quotations and citation omitted); *see also Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 525 (5th Cir. 2013) (expert was qualified to appraise specific facility at issue because he "demonstrated his familiarity with the appraisal of heavy industrial plants broadly, even if he had little experience with Scalfuel plants in particular").

As Plaintiff recognizes, "Addison clearly has qualifications" regarding medical billing and "is familiar with" UCR charges in the San Antonio and Houston areas by virtue of her work experience. Dkt. No. 27 at 7–8. Whether or not Addison's analysis accurately reflects the UCR rate in the Rio Grande Valley goes to the weight rather than the admissibility of her testimony and is not grounds for exclusion. *See Koenig*, 2017 WL 7732809, at *3 ("Defendants further argue the medical costs are not based on consultations with Plaintiff's medical providers or other medical providers in San Antonio. . . . Whether or not the estimate costs of future medical care are made based on San Antonio rates goes to the weight not the admissibility of the testimony . . . and should be left for the finder of fact."). Any perceived deficiencies with the methods and bases of

Addison's opinions may be raised through vigorous cross-examination at trial. *Primrose*, 382 F.3d at 562–63 (5th Cir. 2004) (questions relating to the bases and sources of an expert's opinion go to weight rather than admissibility because it is "the role of the adversarial system, not the court, to highlight weak evidence").

## V. REQUEST FOR RELIEF

For the foregoing reasons, SpaceX respectfully requests that the Court deny Plaintiff's Motion and grant SpaceX all other such relief to which it may be entitled.

Dated: July 18, 2023                                                    Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

 /s/ Michelle D. Pector
Michelle D. Pector
*Attorney-in-Charge*
State Bar No. 24027726
SDTX Bar No. 28869
Jared Wilkerson
State Bar No. 24084096
SDTX Bar No. 2117319
michelle.pector@morganlewis.com
1000 Louisiana, Suite 4000
Houston, Texas 77002
(713) 890-5000 Telephone
(713) 890-5001 Facsimile

**ROERIG, OLIVEIRA, & FISHER, LLP**

David Oliveira
State Bar No. 15254675
doliveira@rofllp.com
10225 N. 10th Street
McAllen, Texas 78504
(956) 393-6300 Telephone
(956) 386-1625 Facsimile

*Attorneys for Defendants*

-13-

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 18, 2023, a true and correct copy of the foregoing document has been served electronically to all known counsel of record in accordance with the Texas Rules of Civil Procedure.

                                                          */s/ Michelle Pector*
                                                          Michelle Pector